UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KUN DUAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-02333-RLY-KMB |
| | ) | |
| MX PAN INCORPORATED d/b/a FORMOSA SEAFOOD BUFFET, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Since May 2023, Defendant Siu Wong Ping a/k/a Suiwong Ping a/k/a Peter Pan ("Mr. Ping") has been representing himself *pro se* in this case.  In October 2024, Mr. Ping appeared ill at an in-person hearing before the undersigned.  [Dkt. 62.]  The Court took a recess, during which time Mr. Ping's condition worsened and he was ultimately transported to a local hospital and the hearing was adjourned.  [*Id*.]  The Court held another hearing six weeks later.  Mr. Ping appeared at that hearing in a wheelchair accompanied by his daughter, who informed the Court that her father had suffered a stroke and was not able to speak coherently.  [Dkt. 68 at 1.]

On January 30, 2025, the undersigned issued a Report and Recommendation on various pending motions in this action.  [Dkt. 75.]  Among other things, the undersigned recommended "that all proceedings against Defendant Ping be stayed until he is ruled competent or until a guardian ad litem is appointed as his legal representative."  [Dkt. 75 at 15.]  No Party objected, and the District Judge adopted the undersigned's Report and Recommendation in full.  [Dkt. 76.]  Thus, this lawsuit as to Defendant Ping only is currently stayed.  [*Id.*]

The Court held a competency hearing on July 14, 2025.  [Dkt. 94.]  Defendant Ping was required to appear in person.  All other Parties were invited to the hearing but not required to

attend. Defendant Dong, who is Defendant Ping's wife, attended the hearing with him. Plaintiff's counsel did not attend the hearing. The purpose of the hearing was to determine whether Defendant Ping is competent to represent himself in this case. Mr. Ping only speaks Mandarin, so the Court provided a translator for purposes of this hearing. [*Id.*] The Court asked Mr. Ping a series of questions. [*Id.*] Both Mr. Ping and Ms. Dong were given opportunities to speak on their own behalf and ask questions. [*Id.* at 1-2.] Additional details from the hearing will be discussed more fully herein.

## I.    APPLICABLE STANDARD

Federal Rule of Civil Procedure 17(c)(2) states that "the court must appoint a guardian ad litem—or issue another appropriate order—to protect a[n] . . . incompetent person who is unrepresented in an action." Before the court can appoint a guardian ad litem or issue another appropriate order under this provision, there must be a determination of incompetency. The Seventh Circuit Court of Appeals has described legal competency as a "threshold issue" that must be resolved before adjudicating other aspects of the lawsuit. *See Yoder v. Patla*, 2000 WL 1225476, at *2 (7th Cir. 2000) (addressing competency before venue issue) (citing *T.W. and M.S. by Enk v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997)). Courts must assess a litigant's competency when a party moves for the appointment of a guardian ad litem or raise the issue *sua sponte* when there is verifiable evidence of incompetency. *See U.S. v. 30.64 Acres of Land, More or Less, Situated in Klickitat County, State of Wash.*, 795 F.2d 796, 805 (9th Cir. 1986) (report from the Social Security Administration that defendant in a lawsuit was mentally disabled required the court to assess his competency sua sponte); *Yoder*, 2000 WL 1225476, at *2 (motion claiming that an Illinois county had declared the plaintiff legally disabled "should have apprised the district court of [his condition]" and triggered competency proceedings). Competency can pair with other issues to

warrant the appointment of a guardian ad litem or other appropriate order. *K.E.SL. v. Anderson*, 2015 WL 1275314, at *1 (E.D. Wis. Mar. 19, 2015) ("Because of his age, inability to speak English, and concerns over his competency, the Court appointed an attorney to act as Plaintiff's guardian ad litem.").

If an individual is found to be incompetent, the Court "must appoint a guardian ad litem— or issue another appropriate order" to provide adequate protection for the incompetent individual. Courts have held that appointment of counsel is an example of "another appropriate order" under the rule. *See, e.g.*, *Krain v. Smallwood*, 880 F.2d 1119, 1121 (9th Cir. 1989) ("Or the court may find that the incompetent person's interests would be adequately protected by the appointment of a lawyer.")

A court has a duty to raise the issue of competency *sua sponte* if it is not raised by the parties. *See, e.g.*, *Yoder*, 2000 WL 1225476, at *2. The Court has wide discretion in setting a competency hearing, "provided at a minimum the person whose competence is in question receives notice and an opportunity to be heard." Steven Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 17 (February 2024) (citing *Sturdza v. United Arab Emirates*, 562 F.3d 1186, 1189 (D.C. Cir. 2009)); *see also Thomas v. Humfield*, 916 F.2d 1032, 1034 (5th Cir. 1990). "The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard." *Goldberg v. Kelly*, 397 U.S. 254, 268-69 (1970). But the fact that the Court holds a hearing on competency does not require the Court to find the individual is incompetent. *Zolnierz v. Arpaio*, 2013 WL 253870, at *1 (D. Ariz. Jan. 23, 2013). "Individuals are incompetent for Rule 17 purposes only if they lack the capacity to litigate under the law of their domicile." *Burress v. Blake*, 2016 WL 11475017, at *1 (E.D. Tex. Oct. 12, 2016). *See also Yoder*, 2000 WL 1225476,

at *3 ("Under Rule 17(c) . . . mental competency is determined by reference to the law of the party's domiciliary state." ).

## II.    DISCUSSION

### A. Competency Determination

Mr. Ping is domiciled in Indiana.  He owns a home in Indiana, [dkt. 67 at 4], recently operated an Indiana business, [dkt. 1 at 2-3], has regular medical appointments in Indiana, [dkt. 96 at 9, 11], and has a service address in Indiana for purposes of this lawsuit.  Accordingly, the Court will apply relevant provisions of Indiana law in evaluating Mr. Ping's competency.

"Indiana courts have rarely had occasion to interpret [Indiana] Trial Rule 17(c) as it applies to incompetent persons." *Ramos v. Robertson's Apts.*, 2012 WL 5818306, at *2 (Ind. Ct. App. 2012).  However, Indiana courts have relied on the "federal and state counterparts" and concluded that "Trial Rule 17(c) gives the trial court discretion to determine whether an incompetent person is adequately represented in the proceedings such that no guardian ad litem is necessary." *Id.* (citing *Brewer v. Brewer*, 403 N.E.2d 352, 354 (Ind. Ct. App. 1980)).  Indiana courts have also used a broad interpretation of competency in line with the purpose of the Rule: the trial court should act when the "party litigant is not competent, understandingly and intelligently, to comprehend the significance of legal proceedings and the effect and relationship of such proceedings in terms of the best interests of such party litigant." *Id.* (quoting 53 Am. Jur. 2d *Mentally Impaired Persons* § 162 (2012)).

The Court will consider Mr. Ping's answers and observable behavior from the competency hearing to determine if he is competent under Indiana Trial Rule 17(c).  Mr. Ping only speaks Mandarin, so the Court provided an interpreter for the competency hearing.  Mr. Ping had a cane at the hearing.  He attempted to stand to be put under oath, but he could only stand with the help

of his wife, Defendant Dong. [Dkt. 96 at 7.] When asked his age, Mr. Ping asked his wife. [*Id.* at 8.] The Court then clarified that only Mr. Ping was allowed to answer the questions. [*Id.*] Mr. Ping stated he lives in Greencastle. [*Id.*] He correctly identified his wife but was unable to state the date of the hearing. [*Id.*] He knew he was in Indianapolis but was unable to explain why he was in court or the role the judge played. [*Id.* at 9.] He identified some of his past work, and stated he was working in the restaurant industry before suffering a stroke. [*Id.*] He confirmed that he had a stroke and stated that he's been going to physical therapy. [*Id.*] He has difficulties speaking, has lost his hearing in his right ear, and is unable to move his right arm. [*Id.* at 9-10.] Mr. Ping confirmed he is right handed. [*Id.*] He has some difficulty remembering things and some difficulty recognizing places. [*Id.* at 10-11.] His wife handles all domestic tasks and finances—Mr. Ping stated that he only attends medical appointments or stays home. [*Id.* at 11.] He is able to read. [*Id.*] He testified that he is able to distinguish between a truth and a lie, and when asked to provide an example of each, he said, "The truth will be I am right here. I'm not anywhere else." [*Id.* at 12.]

Mr. Ping did not know what it meant to be a defendant, he could not tell the difference between a civil and criminal case, and he could not explain what this case was about. [*Id.*] When asked if he could maintain focus, Mr. Ping stated, "I don't understand a lot of the questions. I don't know." [*Id.* at 13.] When the Court asked Mr. Ping to repeat a few simple sentences he was not able to do so accurately:

The Court: Mr. Ping, can you repeat after me, "The dog ran down the street"?

Mr. Ping: What did you say?

The Court: I'll ask a different one and ask if Mr. Ping can repeat this sentence: "It is a nice day to go to the beach."

Mr. Ping: Do I have to say that?

The Court: I'm trying to see if he can repeat after me, so can he repeat, "It is a nice day to go to the beach"?

Mr. Ping: It is a nice day. I can go to the beach.

The Court: One more. "My friends are coming over for dinner."

Mr. Ping: What did you say?

The Court: Can he repeat after me, "My friends are coming over for dinner"?

Mr. Ping: My friend is coming to my place for dinner.

[*Id.* at 13-14.]

Mr. Ping was able to appropriately respond to a few simple decision-making questions such as what he would do if he touched a hot stove ("remove my hand immediately") or what he would do if a customer forgot a jacket at his restaurant ("I will take the jacket to the front desk"). [*Id.* at 14-15.] The Court asked Mr. Ping if he'd like to say anything about his condition, which he replied, "I don't know." [*Id.* at 15.] The Court directly asked Mr. Ping if he thought he could continue to represent himself in this lawsuit, he responded, "Right now I don't think it's possible." [*Id.*]

The Court allowed Ms. Dong to also speak about her husband's condition. She reported that he is not able to do anything and relies on her for everything. [*Id.* at 16.] Ms. Dong spoke about the immense cost of treatment, the time commitment on the family because of Mr. Ping's physical therapy, and the financial pressure it has put on the family. [*Id.* at 16-17.]

Based on the competency hearing conducted, it is clear to the Court that Mr. Ping is not competent for purposes of representing himself in this civil lawsuit. Mr. Ping exhibited numerous physical and cognitive limitations during the competency hearing. These limitations indicate that he is suffering from a serious and ongoing medical condition, and they corroborate his wife's testimony that Mr. Ping is current unable to care for himself. His ability to repeat sentences was impaired, he is not able to take care of household tasks or finances, he was not able to stand alone,

6

he could not raise his right hand, and he has no hearing in his right ear.  Most importantly under the relevant standard, Mr. Ping lacks the ability to understand the nature or consequences of the proceedings in this case such that he is unable to act in his own best interest for purposes of representing himself as a Defendant in this civil lawsuit.  Mr. Ping was not able to identify his role in this case.  He was not able to distinguish between a civil or criminal proceeding.  He did not know the role of the judge.  He did not know what this case was about.  He was unable to explain why he was at his own competency hearing.  It is clear from these responses that Mr. Ping is not able to "understandingly and intelligently" comprehend the significance of his role in this case, let alone the effect of the proceedings as they relate to his best interests.  As such, the Court finds Mr. Ping incompetent for purposes of representing himself as a Defendant in this civil lawsuit.

### B.  Next Steps

Once an individual has been declared incompetent in the context of a case, the Court must take appropriate action under Federal Rule of Civil Procedure 17(c).  Rule 17(c)(2) states that "the court must appoint a guardian ad litem—or issue another appropriate order—to protect a[n] . . . incompetent person who is unrepresented in an action."  An incompetent person is often appointed a guardian ad litem, but in some cases "another appropriate order may adequately protect the person's interests."  *AT&T Mobility, LLC, v. Yeager*, 143 F. Supp. 3d 1042, 1051 (E.D. Cal. 2015) (internal quotations omitted).  Rule 17(c) "requires a court to take whatever measures it deems proper to protect an incompetent person during litigation."  *30.64 Acres of Land*, 795 F.2d at 805.  The decision of whether to appoint a guardian ad litem or issue another appropriate order is a fact-specific endeavor made on a "case-by-case basis" and the decision "rests within the sound discretion of the district court."  *Zolnierz*, 2013 WL 253870, at *1 (citing *M.K. through Hall v. Harter*, 716 F.Supp. 1333, 1335 (E.D. Cal. 1989)).

Appointment of a guardian ad litem is not always the best course of action "because a non-lawyer has no authority to appear as an attorney for others than himself, if a guardian ad litem is not a lawyer, he or she must be represented in turn by counsel."  *AT&T Mobility*, 143 F. Supp. 3d at 1053 (cleaned up).  Many courts have held that "[t]he appointment of counsel may serve as [an] alternative to the appointment of a guardian ad litem."  *Id.*; *see also Krain*, 880 F.2d at 1121 ("Or the court may find that the incompetent person's interests would be adequately protected by the appointment of a lawyer.") (citing *Westcott v. United States Fidelity & Guaranty Co.,* 158 F.2d 20, 22 (4th Cir. 1946) (affirming judgment against minor who was represented by an attorney but not a guardian ad litem)); *Armstrong v. Brotherton*, 2014 WL 460966, at *3 (D. Ariz. Feb. 5, 2014) (appointing counsel for an incompetent plaintiff in lieu of a guardian ad litem); *Bacon v. Mandell*, 2012 WL 4105088 (D.N.J. Sept. 14, 2012) (outlining plan to appoint permanent pro bono counsel for mentally incompetent plaintiff at the screening stage).

Under the circumstances of this case, the Court finds it appropriate under Rule 17(c) to appoint an attorney for Mr. Ping so that his interests can be adequately represented in this case. The Court finds this to be the appropriate path because while Mr. Ping suffered a serious medical event and the effects of it have rendered him incompetent to represent himself in this action, he has improved from hearing to hearing and the undersigned believes that the appointment of an attorney will adequately represent his interests and "protect" him during this civil action against him.  Mr. Ping's status as a non-English speaker further supports the Court's decision to appoint an attorney to represent him under the very unique circumstances presented by this case.  *See K.E.SL.*, 2015 WL 1275314, at *1 ("Because of his age, inability to speak English, and concerns over his competency, the Court appointed an attorney to act as Plaintiff's guardian ad litem.").

The Court emphasizes that an attorney is being appointed **as a representative for Mr. Ping only**—the attorney neither represents the defaulted corporate Defendant MX Pan nor Defendant Dong. The Court will coordinate with the Clerk's Office's recruited counsel program coordinator in this District to appoint an appropriate attorney to represent Mr. Ping.

At this time, the case as to Defendant Ping remains stayed. After an attorney has appeared on the Court's docket to represent Mr. Ping, the Court will schedule a Telephonic Status Conference with Plaintiff's attorney and Mr. Ping's court-appointed attorney to determine next steps.

### III.    CONCLUSION

Based on the competency hearing held, the Court finds that Mr. Ping is not competent to represent himself as a Defendant in this civil case. As such, the Court will appoint Mr. Ping an attorney under Federal Rule of Civil Procedure 17(c). The Court emphasizes that the attorney is being appointed to represent Mr. Ping only, not the corporate Defendant MX Pan or Defendant Ms. Dong. After an attorney has appeared on the Court's docket to represent Mr. Ping, the Court will schedule a Telephonic Status Conference with Plaintiff's attorney and Mr. Ping's court-appointed attorney to determine next steps. The case against Mr. Ping remains **STAYED** at this time. The Clerk is **DIRECTED** to enclose a copy of dkts. 96 (Sealed Transcript) and 97 (Notice of Filing of Official Transcript Under Seal) with the copy of this Order being mailed to Defendant Ping to ensure that he has copies of those filings.

**SO ORDERED.**

Date: 9/2/2025

*Kellie M. Barr*

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

MX PAN INCORPORATED d/b/a FORMOSA SEAFOOD BUFFET
5998 Hollythorn Place
Carmel, IN 46033

SIU WONG PING a/ka/ SIUWONG PING a/k/a PETER PAN
5998 Hollythorn Place
Carmel, IN 46033

MIN XIU DONG a/k/a MINXIU DONG
5998 Hollythorn Place
Carmel, IN 46033